**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SHEINDLE SOFER,<br><br>       Plaintiff,<br><br>      v.<br><br>TRANSUNION, LLC; EQUIFAX INFORMATION SERVICES, LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; SYNCHRONY BANK;<br><br>       Defendants. | Case No. 1:23-cv-04844-DLI-JAM<br><br>April 24, 2024 |

**DEFENDANT EXPERIAN INFORMATION SOLUTION, INC.'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SANCTIONS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

FACTS .................................................................................................................................. 6

MISREPRESENTATIONS .................................................................................................. 9

    I.      MISREPRESENTATIONS IN THE COMPLAINT ............................................ 9

    II.     MISREPRESENTATIONS IN DISCOVERY .................................................... 12

    III.    MISREPRESENTATIONS TO THE COURT.................................................... 13

    IV.   MISREPRESENTATIONS IN THE RETAINER AGREEMENT ..................... 13

LEGAL STANDARD .......................................................................................................... 14

ARGUMENT ....................................................................................................................... 16

    I.      SANCTIONS ARE WARRANTED UNDER RULE 11(c)(3) ........................... 16

    II.     SANCTIONS ARE WARRANTED UNDER RULE 26 ................................... 18

    III.    SANCTIONS ARE WARRANTED UNDER THE COURT'S
           INHERENT POWERS ..................................................................................... 18

APPROPRIATE PENALTIES ............................................................................................. 20

CONCLUSION..................................................................................................................... 23

**Page**

C<small>ASES</small>

*Alexander v. Our Lady of Mercy Med. Ctr.*,
  2000 WL 254015 (S.D.N.Y. Mar. 7, 2000) ...........................................................18

*Bakken Res., Inc. v. Edington*,
  2019 WL 1437273 (S.D.N.Y. Mar. 29, 2019) ........................................................15

*Butnick v. Experian Info. Sols., Inc.*,
  2021 WL 395808 (E.D.N.Y. Feb. 4, 2021).................................................1, 21, 22

*Castro v. Outdoorsman Resale, Inc.*,
  2024 WL 659943 (S.D.N.Y. Feb. 16, 2024)......................................................19, 20

*Chambers* v. *NASCO, Inc.*,
  501 U.S. 32 (1991).................................................................................................20

*Enmon v. Prospect Cap. Corp.*,
  675 F.3d 138 (2d Cir. 2012)...................................................................................16

*Esposito v. Suffolk Cnty. Cmty. Coll.*,
  517 F. Supp. 3d 126 (E.D.N.Y. 2021) ...................................................................16

*Goodyear Tire & Rubber Co.* v. *Haeger*,
  581 U.S. 101 (2017)...............................................................................................20

*Greenburg v. Roberts Prop., Ltd.*,
  246 F. App'x 500 (9th Cir. 2007) ..........................................................................18

*Guild Mortg. Co. LLC v. CrossCountry Mortg. LLC*,
  2022 WL 18999842 (W.D. Wash. Dec. 6, 2022) ..................................................14

*Hermes of Paris, Inc. v. Swain*,
  2021 WL 5170726 (2d Cir. Nov. 8, 2021)..............................................................20

*Huebner v. Midland Credit Mgmt., Inc.*,
  897 F.3d 42 (2d Cir. 2018).....................................................................................15

*In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig.*,
  712 F. Supp. 2d 255 (S.D.N.Y. 2010).....................................................................20

*In re Pennie & Edmonds LLP,*
    323 F.3d 86 (2d Cir. 2003) .................................................................14

*Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.,*
    991 F.3d 361 (2d Cir. 2021) ................................................................15

*JMC Rest. Holding, LLC v. Pevida,*
    2016 WL 3351007 (E.D.N.Y. June 14, 2016) ......................................15

*Kaufman v. Equifax Info. Servs.,*
    2019 WL 3997461 (E.D.N.Y. Aug. 22, 2019) ......................1, 15, 17, 21

*Kiobel v. Royal Dutch Petrol. Co.,*
    2009 WL 1810104 (S.D.N.Y. June 25, 2009) ......................................15

*Kleehammer v. Monroe Cnty.,*
    2013 WL 1182968 (W.D.N.Y. 2013) ...................................................14

*Krausz v. loanDepot.com, LLC,*
    2022 WL 16960928 (S.D.N.Y. Nov. 16, 2022) ......................................1

*Lawrence v. City of New York,*
    2018 WL 3611963 (S.D.N.Y. July 27, 2018) ..................................14, 15

*Liebowitz v. Bandshell Artist Mgmt.,*
    6 F.4th 267 (2d Cir. 2021) ...................................................................16

*Markey v. Lapolla Indus., Inc.,*
    2015 WL 5027522 (E.D.N.Y. Aug. 25, 2015), *report and recomm. adopted,*
    2016 WL 324968 (E.D.N.Y. Jan. 26, 2016) ........................................18

*McAlister v. Equifax Info. Servs., LLC,*
    2022 WL 3716535 (S.D. Ind. Aug. 29, 2022) ......................................22

*Mizrahi v. Experian Information Solutions, Inc.,*
    23-cv-04570 (E.D.N.Y.) .........................................................................7

*Mota v. Imperial Parking Sys.,*
    2010 WL 3377497 (S.D.N.Y. Aug. 24, 2010) ......................................17

*Muhammad v. Walmart Stores E., L.P.,*
    732 F.3d 104 (2d Cir. 2013) (per curiam) ............................................14

*Oliveri v. Thompson*,
    803 F.2d 1265 (2d Cir. 1986) ............................................................. 14

*Ostreicher v. Chase Bank USA, N.A.*,
    2020 WL 6809059 (S.D.N.Y. Nov. 19, 2020) .................................. 1, 21

*Pentagen Techs. Int'l Ltd. v. United States*,
    172 F. Supp. 2d 464 (S.D.N.Y. 2001), *aff'd*, 63 F. App'x 548 (2d Cir. 2003) ....................... 20

*Raimey v. Wright Nat. Flood Ins.*,
    76 F. Supp. 3d 452 (E.D.N.Y. 2014) ............................................... 15, 18

*Revellino & Byczek, LLP v. Port Authority of N.Y. & N.J.*,
    682 Fed. App'x 73 (2d Cir. 2017) ..................................................... 14

*Rosenberg v. Equifax Info. Servs. LLC*,
    2020 WL 4253063 (D.N.J. July 16, 2020) ......................................... 21

*Rossbach v. Montefiore Med. Ctr.*,
    2021 WL 3421569 (S.D.N.Y. Aug. 5, 2021) ..................................... 16

*Rossbach v. Montefiore Med. Ctr.*,
    81 F.4th 124 (2d Cir. 2023) ............................................................. 15

*Schlaifer Nance & Co. v. Est. of Warhol*,
    194 F.3d 323 (2d Cir. 1999) ................................................ 14, 16, 18

*Spira v. Trans Union, LLC*,
    2022 WL 2819469 (S.D.N.Y. July 19, 2022) ...................................... 1

*TransUnion, LLC v. Ramirez*,
    594 U.S. 413 (2021) ........................................................................... 1

*United States v. Morales*,
    2010 WL 2400120 (E.D.N.Y. June 11, 2010) ................................ 18, 19

*Velazquez v. Elder Depot, Inc.*,
    No. 1:23-CV-105-VEC, ECF No. 15 (S.D.N.Y. May 1, 2023) ............. 22

*Weddington v. Sentry Indus., Inc.*,
    2019 WL 5212355 (S.D.N.Y. Oct. 16, 2019) ................................ 18, 19

*Williamson v. Recovery Ltd. P'ship*,
    542 F.3d 43 (2d Cir. 2008) ............................................................... 14

*Zinnamon v. Satya Jewelry II*,
   2023 WL 3511123 (S.D.N.Y. Apr. 28, 2023)...................................................1, 2, 22

*Zlotnick v. Equifax Info. Servs., LLC*,
   583 F. Supp. 3d 387 (E.D.N.Y. 2022) ......................................................................1

# INTRODUCTION

In the last several years, district courts, including in the Eastern District of New York, repeatedly have sanctioned or admonished Stein Saks, PLLC and its attorneys for pursuing frivolous lawsuits. Judge Cogan summed their *modus operandi* this way: "Plaintiff's counsel appears to be bringing multiple meritless FCRA suits, presumably in hopes of scoring a quick settlement and attorney's fees." *Butnick v. Experian Info. Sols., Inc.*, 2021 WL 395808, at *5 n.8 (E.D.N.Y. Feb. 4, 2021) ("caution[ing] Plaintiff's counsel to review its claims carefully or face such sanctions in the future"); *Zinnamon v. Satya Jewelry II*, 2023 WL 3511123, at *1 (S.D.N.Y. Apr. 28, 2023) (ordering payment of "a sanction of $1,000.00 for filing a complaint that unquestionably failed to allege standing adequately"); *Kaufman v. Equifax Info. Servs.*, 2019 WL 3997461, at *3 (E.D.N.Y. Aug. 22, 2019) (awarding Experian attorney's fees against Stein Saks for acting "in bad faith"); *Ostreicher v. Chase Bank USA, N.A.*, 2020 WL 6809059, at *6 (S.D.N.Y. Nov. 19, 2020) (FCRA arguments "farfetched, if not absurd" and took "some nerve" to file).

In mid-2022, in the wake of *TransUnion, LLC v. Ramirez*—which requires a showing of concrete harm to establish standing under the FCRA—several of Stein Sak's cases were dismissed for failure to plead concrete harm to support standing. *Zlotnick v. Equifax Info. Servs., LLC*, 583 F. Supp. 3d 387, 392 (E.D.N.Y. 2022); *Spira v. Trans Union, LLC*, 2022 WL 2819469, at *6 (S.D.N.Y. July 19, 2022); *Krausz v. loanDepot.com, LLC*, 2022 WL 16960928, at *4 (S.D.N.Y. Nov. 16, 2022). This culminated in Stein Saks, and specifically, one of its attorneys, being sanctioned in April 2023, by the Honorable Valerie Caproni in the Southern District of New York, for filing cases without a factual basis to establish standing—even after Judge Caproni had placed the firm on notice for this same conduct six months earlier. *Zinnamon*, 2023 WL 3511123, at *1. Judge Caproni admonished Stein Saks not to file another lawsuit that "obviously fails adequately

to allege standing." *Id*. at *1. Judge Caproni even noted that "Stein Saks ha[s] a business model that appears to rest on filing a high volume of virtually identical complaints. The firm's apparent decision to spend no time developing the facts necessary to allege standing and just hope that it does not get caught is wasting the Court's time. The firm's model must change." *Id*. at *3.

In the wake of this string of adverse standing decisions, Stein Saks began propping up its lawsuits with fabricated evidence—specifically, false credit denial letters—to manufacture standing and claims. This case is one of those lawsuits. Plaintiff's standing and claims are based upon a credit denial letter from Cornerstone First Mortgage, even though Plaintiff admittedly never applied for, or was denied, credit with Cornerstone. Declaration of Kerianne Tobitsch ("Tobitsch Decl."), Ex.10 at 71-73, 84-85. The Cornerstone employee (Carol Franz) whose name appears on the letter attested that the letter is fraudulent. Declaration of Carol Franz ("Franz Decl."), ¶ 2. So has the owner of Cornerstone, explaining that no one with Plaintiff's name has ever applied for or been denied credit with Cornerstone. Declaration of Sean Cahan ("Cahan Decl."), ¶ 3.

That Stein Saks knew this letter (and others) was fabricated is not open for debate. Through discovery, Experian learned that Judah Stein—one of the named partners at Stein Saks— is the person that prepared the template that he then directed others to use to create the fake Cornerstone credit denial letter in this case (and many others):

**From:** Judah Stein <jstein@steinsakslegal.com>
**Date:** January 23, 2023 at 3:28:42 PM EST
**To:** "yenon callcci.com" <yenon@callcci.com>
**Subject: RE: Mortgage denial**

RE: Refinance

Dear _____,

I am a licensed mortgage banker. After receiving your loan application, I ran your credit and reviewed all three of your credit reports. As discussed, at this time, due to the late mortgage payment with NR/SMS/CAL, your credit scores has been affected and you would be paying a higher interest rate. Based on your current scores, it would not make sense for you to refinance.

Thank you,

Judah

Declaration of Yenon Argy ("Argy Decl."), ¶ 21, Ex. C. The credit denial content Mr. Stein dictated in the e-mail above re-appeared—almost verbatim—in the fake Cornerstone credit denial letter that Stein Saks used in this case to falsify evidence of standing and claims. Indeed, both Mr. Stein's e-mail and, thereafter, the fake Cornerstone credit denial letter that was prepared for the Plaintiff in this case, have the same grammatical typo ("your credit scores *has been* affected"):



## Refinance

May 17th, 2023

Dear Sheindle Sofer,

I am a licensed mortgage banker. After receiving your loan application, I ran your credit and reviewed all three credit reports. As discussed, at this time, due to the Synchrony/ Gap account that appears, your credit scores has been  affected  and you would be paying a higher interest rate. Based on your current scores, it would  not make sense for you to refinance your mortgage.

*Id*. ¶ 22, Ex. B; Tobitsch Decl., Ex. 2. Yenon Argy—who operates a credit repair clinic in South Florida and who was instrumental in Stein Saks's scheme—attests that he drafted the fake Cornerstone letter above at the direction of Stein Saks using the template provided by Stein Saks, which Stein Saks then used in this case (and others) to provide the so-called "evidence" to support the litigation. Argy Decl., ¶¶ 21-22.

But not only did Mr. Argy draft the fake credit denial letters (as explained above), he also referred clients to Stein Saks for litigation. Argy Decl. ¶ 14. In return for this service, Stein Saks compensated Mr. Argy with a share of settlement proceeds in litigation. *Id*. More specifically, when litigation matters settled and settlement proceeds were deposited into Stein Saks's client trust account, Stein Saks would transfer Mr. Argy's cut of the settlement money through an attorney in Florida (Justin Zeig) who was not involved in the matters or ever disclosed to the clients/plaintiffs. *Id*. ¶¶ 14-16. Stein Saks appears to have believed that because Mr. Zeig is a lawyer, Stein Saks

could share the settlement proceeds with Mr. Zeig and not raise any red flags with the State Bar of New York. In other words, in Stein Saks's view, by having Mr. Zeig pay Mr. Argy his cut, rather than having the money come directly from the Stein Saks client trust account, Stein Saks would evade scrutiny for unethically sharing fees with non-lawyers.

In addition to unlawfully sharing settlement proceeds with non-lawyers—a practice that was not disclosed to the Plaintiff in this case (Tobitsch Decl., Ex. 10 at 54-55)—Stein Saks never even communicated with Plaintiff at the time she was retained as a client. *Id*. 24-26, 42-45, 98:24-103:8. Instead, Plaintiff initially hired Mr. Argy to repair her credit. *Id*. 12:10-25. When Mr. Argy was unable to clean Plaintiff's credit through credit disputes to Experian, Mr. Argy had Plaintiff e-sign a Stein Saks retainer agreement. Argy Decl., ¶¶ 4, 18, 30, Ex. E. Although that agreement provides, in multiple places, that Stein Saks "has explained" to her the various aspects of the retainer, Plaintiff testified that *none of that is true—i.e.*, Plaintiff and Stein Saks did not have a single conversation about the retainer agreement or any of its contents, including how settlement proceeds would be allocated. Tobitsch Decl., Ex. 10 at 24:7-24; Ex. 11 at 31:4-8. Thus, as Plaintiff explained, no one—not Stein Saks or any of its attorneys—ever explained to her that settlement proceeds would be shared with non-lawyers, or worse, that Plaintiff might not get any financial compensation from any future settlement. *Id*., Ex. 10 at 54-55.

Plaintiff further testified that Stein Saks filed the Complaint in this case without her knowledge and consent. *Id*. at 85:24-86:8. She also testified that the sworn discovery responses that Stein Saks drafted and produced to Experian (and the other defendants) not only were inaccurate, but did not come from her. *Id*. at 68-80. Indeed, she explained that no one from Stein Saks even spoke to her about the responses. *Id*. The first time that Plaintiff ever saw the discovery responses—which falsely stated that Plaintiff applied for and was denied credit with Cornerstone

Mortgage—was at the day of her deposition when such document was marked as an exhibit. *Id.* 92:5-14. Despite not requesting Plaintiff's attestation on the discovery responses, Stein Saks's lawyers verified that they were a true and correct copy of Plaintiff's responses. Tobitsch Decl., Ex. 1, at 15. That attorney verification is self-evidently false. Indeed, Plaintiff testified that the dispute letter that was sent to Experian—and upon which Stein Saks sued in this case—bears her forged signature. *Id.*, Ex. 10 at 120:21-122:18. Plaintiff ultimately fired Stein Saks, hired new counsel (Mr. Katz), and served corrected interrogatory responses recanting those that Stein Saks had prepared without her knowledge. ECF Nos. 42-46; compare Tobitsch Decl. Ex. 1 to Exs. 7-9.

The foregoing unethical practices are not confined to this case. Experian has identified multiple matters in the Eastern District of New York, the District of New Jersey, Central District of California, Eastern District of Pennsylvania, and Northern District of Texas, that have the same pattern and practice of misconduct with regard to fake Cornerstone denial letters. Argy Decl., Ex. C; Tobitsch Decl., ¶ 19. Moreover, in addition to Cornerstone, Experian has identified approximately 50 cases that the Stein Saks firm has filed in the past 18 months alleging mortgage denials from at least 13 different mortgage-related entities, most of which confirmed that the plaintiff in the case never even applied for a mortgage; and, for others, Experian discovered that it would be impossible for the mortgage entity to even deny credit because they are mortgage brokers, not mortgage lenders. Tobitsch Decl., ¶¶ 19-20.

In short, the Stein Saks firm, with the assistance of others, has engaged in unethical and unlawful conduct aimed at gaining access to federal court and coercing settlements under false pretenses. This case is but one example of such misconduct. As the evidence of Stein Saks's sanctionable conduct in this case is indisputable and overwhelming, the motion for sanctions should be granted, and the Court should refer the Stein Saks firm and the lawyers involved in this

case to the State Bar of New York for disciplinary action.

## FACTS

In spring 2023, Plaintiff Sheindle Sofer and her husband, Burach, wanted to take a line of credit out on their home in Staten Island. Tobitsch Decl., Ex. 11 at 15:12-22. They turned to Efraim Fishel Friedman to help them improve their credit. *Id.* 9:20-11:10. Mr. Friedman, in turn, referred the Sofers to Collective Credit International, LLC ("CCI"), a credit repair clinic run by Yenon Argy. *Id.* 12:10-25; *see also* Argy Decl., ¶ 3.

CCI advised the Sofers that the late payments on Sofer's Synchrony Bank/Gap account could not be removed from Plaintiff's file, and the next step was a lawsuit against Experian for allegedly failing to remove the negative (but accurate) tradeline. Tobitsch Decl., Ex. 11 at 28:3-6, 30:1-16. When the Sofers asked about the risks of litigation, they were informed by CCI that the upside was removal of the tradeline and there was "no downside" because there was no charge for "lawyers' fees" and it would be "an easy thing" without any participation from the Sofers. *Id.* 29:6-17, 32:12-16; 33:15-34:8; *see also* Ex. 10 at 40:24-25.

CCI provided the Sofers with a retainer agreement that had been drafted on Stein Saks letterhead. *Id.*, Ex. 10 at 29:14-35:25; *see also* Argy Decl., ¶ 30 Ex. E. No attorney from Stein Saks spoke with Plaintiff or her husband about the retainer agreement, how fees would be shared (including with non-lawyers), or what proceeds, if any, the Sofers would get from any future settlement (none). Tobitsch Decl., Ex. 10 at 24:7-24, Ex. 11 at 31:4-8. Indeed, while the retainer agreement repeatedly states that Stein Saks "has explained" to Plaintiff various aspects of the engagement (Argy Decl., Ex. E at 2-3), no such discussion ever took place—not a thorough one or any discussion whatsoever. Tobitsch Decl., Ex. 10 at 24-25, 42-49. Before filing this lawsuit in her name, no one from Stein Saks even communicated with Plaintiff or her husband about the

lawsuit, the complaint, or the basis for the claims. Tobitsch Decl., Ex. 10 at 42:8-18, 44:14-18, 45:4-23, 48:18-49:6, 66:19-68:23, 97:13-18, 98:24-103:8. To this day, Plaintiff has never met or communicated with any attorney from Stein Saks. *Id*. at 98:24-103:8.

Without any input from Plaintiff, Tamir Saland of the Stein Saks firm filed the Complaint in this case, falsely alleging that Plaintiff applied for, and was denied, a refinanced mortgage from Cornerstone First Mortgage. ECF No. 1 ¶¶ 42-44. Thereafter, in response to defendant TransUnion's interrogatories, Mr. Saland prepared and served Plaintiff's answers, which repeated the false assertion that Plaintiff was denied a mortgage from Cornerstone mortgage. Tobitsch Decl., Ex. 1 at 5, 7, 8 (Rogs. 4, 7, 9). The responses even attached a copy of the false Cornerstone credit denial letter. *Id*., Ex. 1; 2. Plaintiff and her husband were never provided a copy of these responses. *Id.*, Ex. 10 at 68:8-69:1, 70:13-71:7; Ex. 11 at 88:12-90:3. They did not authorize the responses. *Id*. They testified that the responses were false. *Id*., Ex. 10 at 73:16-75:17, Ex. 11 at 87:3-22. And, at the time these responses were served, Stein Saks still had not met or communicated with the Sofers. *Id*., Ex. 10 at 98:24-103:08; Ex. 11 at 38.

In December 2023, Experian began inquiring into the authenticity of a Cornerstone credit denial letter that Stein Saks had produced in this case and a separate lawsuit Stein Saks filed in this district: *Mizrahi v. Experian Information Solutions, Inc.*, 23-cv-04570 (E.D.N.Y.). When Experian sought discovery from Cornerstone, Stein Saks filed a motion to dismiss *Mizrahi* with prejudice under FRCP 41(a)(2). *Mizrahi*, ECF No. 37. Experian opposed the motion. *Mizrahi*, ECF No. 38. Judge Gonzalez denied the motion to dismiss and granted Experian two months to conduct discovery into "potentially sanctionable conduct." *Mizrahi*, Jan. 11, 2024 Order.

On January 16, 2024, Mr. Saland informed this Court that Ms. Sofer "no longer wishes to pursue her claims against the Credit Reporting Agencies." ECF No. 30; Tobitsch Decl., ¶ 12.

Incredibly, at the time of that representation to this Court, Mr. Saland had never even spoken one word to Ms. Sofer and, hence, had no idea as to her "wishes." Tobitsch Decl., Ex. 10 at 98:24-103:9. On January 24, 2024, Experian informed the Court that it was "unwilling to stipulate to full dismissal of the litigation . . . so that Experian may conduct discovery in support of a potential sanctions motion." ECF No. 34. The next day, the Court found "that complete dismissal would unduly prejudice Experian" because "terminating the case at this stage would prevent Experian from conducting discovery into potentially sanctionable conduct by Plaintiff." Jan. 25, 2024 Order. The Court then authorized the parties to conduct discovery into such conduct. *Id.*

Until this Court authorized sanctions-related discovery, the Sofers were not aware of any litigation activity in this case. Tobitsch Decl., Ex. 10 at 20:18-21:15; Ex. 11 at 35:3-36:10. At the end of January 2024, Yaakov Saks, one of the named partners of Stein Saks, contacted Mr. Sofer to ask for his assistance in responding to Experian's sanctions-related discovery. *Id.*, Ex. 11 at 37:3-39:3 (testifying this was the first time Stein Saks reached out). Mr. Sofer testified he became worried that he and his wife could be subject to sanctions for conduct they did not commit or authorize. *Id.* at 94:11-24. At that point, the Sofers engaged new counsel, Sam Katz. *Id.* at 92:5-93:22. From Plaintiff's perspective, this is the only counsel she had ever engaged to represent her. *Id.*, Ex. 10 at 66:19-67:13, 97:13-18. A motion to substitute counsel was filed. ECF Nos. 42-44. Stein Saks no longer represents Plaintiff and remains in this case for sanctions purposes only. *See* Mar. 8, 2024 Order.

After being retained, Mr. Katz promptly served Plaintiff's verified answers to Experian's interrogatories, which stated that Plaintiff did not apply for credit with Cornerstone, never received a credit denial letter from Cornerstone, and had never even heard of Cornerstone until after January 2024 when this case went into a sanctions posture. Tobitsch Decl., Ex. 7 at 10-11

(Rog. 14); *id.*, Ex. 8 at 4 (Rogs 1-2).

Carol Franz of Cornerstone, whose name appears on the Cornerstone credit denial letter in this case, attested that she did not author this letter, and that it is false. Franz Decl. ¶ 2. The owner of Cornerstone, Sean Cahan, likewise attested that the Cornerstone letter propping up this case is false. *See* Cahan Decl., ¶ 3. And, Mr. Argy attested that he prepared the false Cornerstone credit denial letter in this case at the direction of Stein Saks. Argy Decl., ¶ 21, Ex. C.

Those are the facts, and they are undisputed.

**MISREPRESENTATIONS**

Stein Saks has littered this case with misrepresentations that, individually or collectively, compel the imposition of sanctions.

## I. **MISREPRESENTATIONS IN THE COMPLAINT**

**A.**     Mr. Saland of Stein Saks signed the Complaint pursuant to Rule 11. It alleges "Plaintiff applied for a refinanced mortgage from Cornerstone First Mortgage, and received a letter on May 17, 2023 advising of her that 'due to the Synchrony/Gap account that appears, your credit scores have been affected and you would be paying a higher interest rate.'" Compl. ¶ 42. That allegation is false. Tobitsch Decl., Ex. 10 at 84:7-85:4; Ex. 11 at 85:22-86:5; Franz Decl. ¶ 4; Cahan Decl. ¶¶ 3-5; Argy Decl., ¶ 22. Stein Saks knew this allegation was false when it was made because Judah Stein of Stein Saks drafted and provided the template for the false credit denial letter to Mr. Argy, who has attested that he prepared the false credit denial letter at Stein Saks's direction. Argy Decl., ¶ 21 Ex. C.

**B.**     The Complaint alleges that Experian's reporting of Plaintiff's "Synchony/Gap" account as late was "inaccurate" not because Plaintiff made the payments on time (she did not), but because "Plaintiff was [not] responsible for not making timely payments" since "the creditor

would not accept payment from Plaintiff." Compl. ¶¶ 17-19. The Complaint asserts that Sofer "called Synchrony to try and make payments on her Account," but "Synchrony advised Plaintiff to reach out to Barclays as the Account had been sold." *Id.* at ¶¶ 26-27. The Complaint further alleges that Plaintiff "called Barclays," which told her "Synchrony was the correct entity," thus "prevent[ing] Plaintiff from being able to make timely payments." *Id.* at ¶¶ 28, 30. Every one of these allegations—made without anyone from Stein Saks ever speaking with Plaintiff—is false.

Synchrony swore, under penalty of perjury, that these allegations are "completely false" because "Synchrony never refused to accept payments on the account. Rather, Synchrony mailed monthly billing statements to Plaintiff and those statements reflect that a balance was due and owing on the account and indicated the payment address which payment was to be made to Synchrony." *See* Tobitsch Decl., Ex. 5 at 17 (Rog 16). Synchrony's invoices demonstrate it sought payment from Plaintiff. *Id.*, Ex. 6 at Synchrony 0017-48. And while the Complaint asserts that Synchrony had a phone call with Plaintiff, Synchrony swore that it "has no record of any such communication with Plaintiff." *Id.*, Ex. 5 at 17 (Rog. 16).

Plaintiff's testimony confirms these allegations are inaccurate. *Id.*, Ex. 10 at 148:3-149:4. Plaintiff testified that she never called Synchrony or Barclays. *Id.* at 148:12-17, 149:2-4. She testified that Synchrony never told her the loan had been transferred to Barclays or that Synchrony refused to accept a payment. *Id.* at 145:14-23, 155:17-156:3. Instead, she testified that the lone conversation was approximately 4 years ago in 2019 between her husband, Burach Sofer, and Synchrony, during which call the payment owed to Synchrony was paid in full. *Id.* at 154:9-14; *id.*, Ex. 7 at 8 (Rog. 9). Plaintiff's testimony corroborates Synchrony's certification that the account was paid in full four years ago. Tobitsch Decl., Ex. 3 at 15 (Rog. 14). Plaintiff's testimony also confirms that the Complaint that Stein Saks drafted, without any input or discussion from

Plaintiff, is false.

**C.** The Complaint falsely purports to present allegations from Ms. Sofer: "Plaintiff Sheindle Sofer ("Plaintiff"), by and through her attorneys, . . . respectfully sets forth, complains, and alleges, upon information and belief, the following." Compl. at 1. Yet, undisputed record evidence establishes that the Complaint was signed and filed by Mr. Saland without any review or input from Ms. Sofer and without her knowledge that Mr. Saland was representing her. Tobitsch Decl., Ex. 10 at 85:24-86:5. Plaintiff testified that she never received a copy of the Complaint or was asked to review it. *Id*. at 85:24-86:8. She never met or spoke to Mr. Saland, and, he never asked Plaintiff for information about the claims, or to confirm the accuracy of facts alleged in the Complaint, before signing his name to the pleading under Rule 11. *Id*. at 86-88. She testified that had Mr. Saland asked her to review the Complaint, she would have informed him that it was incorrect and not to file it. *Id*. at 88:7-12, 93:8-18.

**D.** The Complaint alleges that "Plaintiff disputed the Account with [Experian] with a dispute letter dated March 28, 2023," to request that the Synchrony account "be removed," but the account remained. Compl. ¶¶ 32-33, 36. More specifically, the Complaint alleges "Plaintiff explained the context that surrounded the late payments and why they should be removed from her credit reports" and "Plaintiff explained that . . . she never received notification from Synchrony that her Account had been transferred to Barclays and when she called both entities to make payments, they were both unwilling to accept payments." *Id*. ¶¶ 33-34.

In discovery, Mr. Saland produced a March 28, 2023 dispute letter making these assertions to Experian. Tobitsch Decl., Ex. 4. But Plaintiff never made any assertion that her account transferred to Barclays, and Plaintiff testified that she had no involvement in the preparation of the letter. *Id*., Ex. 2 at 45:14-22, 117:8-118:3. In her verified interrogatory responses served by her

new counsel, Plaintiff confirmed that "she has no knowledge or information regarding the Persons that drafted or mailed the 'dispute letter dated March 28, 2023.'" *Id*., Ex. 9 at 4 (Rog. 1). Plaintiff further testified that the signature on the dispute letter that Mr. Saland produced in discovery is not hers and she did not authorize anyone to sign on her behalf. *Id*., Ex. 10 at 120:21-122:21. A comparison of the signature on the dispute letter versus her verified interrogatories served by Mr. Katz shows they are different. *Id*. That is, the signature on the letter that Mr. Saland produced, consistent with Plaintiff's testimony, appears forged.

## II.   MISREPRESENTATIONS IN DISCOVERY

A.   In discovery, Stein Saks produced a copy of the Cornerstone credit denial letter. As established, the letter is false, and Stein Saks—the author of the template of the letter—knew it was false. Mr. Argy confirms that he drafted the letter at the request of Judah Stein. Argy Decl. ¶ 22.

B.   In discovery, Mr. Saland prepared and served Plaintiff's interrogatory responses, which repeated the assertion that Plaintiff was denied a mortgage from Cornerstone mortgage. Tobitsch Decl., Ex. 1 at 5, 7, 8 (Rogs. 4, 7, 9). The responses also attached a copy of the Cornerstone credit denial letter. *Id*., Exs. 1-2. Plaintiff and her husband were never provided a copy of these responses. Tobitsch Decl., Ex. 10 at 68:8-69:1, 70:13-71:7; Ex. 11 at 88:12-90:3. They did not authorize the responses. *Id*., Ex. 10 at 75:19-76:15. In fact, they testified that the responses were false. *Id*., Ex. 10 at 73:16-77:21, Ex. 11 at 87:3-22, 91:3-20 (testifying that the Cornerstone denial letter allegations appeared to be made up by Stein Saks to prop up his wife's lawsuit). At the time these responses were served, Stein Saks still had not met or communicated with the Sofers. *Id*., Ex. 10 at 98:24-103:8; Ex. 11 at 37:3-39:3.

### III. <u>MISREPRESENTATIONS TO THE COURT</u>

A.     Mr. Saland informed this Court that Ms. Sofer "no longer wishes to pursue her claims against the Credit Reporting Agencies." ECF No. 30; Tobitsch Decl., ¶ 12. At the time of that representation, Mr. Saland had never even spoken one word to Ms. Sofer, and had no idea of her "wishes." *Id.*, Ex. 10 at 98:24-103:8. As evidenced by the fact that Plaintiff retained new counsel in this case, it was not Plaintiff's "wish" to dismiss her case. Instead, it appears that Mr. Saland falsely made this representation to the Court to avoid personal sanctions. *See* Tobitsch Decl., Ex. 10 at 107:5-108:10 (Sofer testifying that Stein Saks never informed her about discovery into potentially sanctionable conduct).

### IV. <u>MISREPRESENTATIONS IN THE RETAINER AGREEMENT</u>

A.     The Stein Saks retainer agreement that Mr. Agry presented to Plaintiff repeatedly provides that Stein Saks "has explained" to Plaintiff the matters embraced within the agreement. In truth, Stein Saks explained nothing to Plaintiff, including fee splitting with non-lawyers and the fact that Plaintiff could receive nothing in the event of a settlement of her case. Indeed, the retainer agreement provides that Stein Saks's contingency fee "is entirely reasonable," that Plaintiff "acknowledges" such, and that Plaintiff makes such acknowledgement "even in the event such fee substantially exceeds Client's recovery amount." Having failed to discuss such issues with Plaintiff, every one of these representations is false.

B.     At no time did Stein Saks disclose to Plaintiff that Stein Saks would share a portion of any of the recovery with non-lawyers (Tobitsch Decl., Ex. 10 at 54:16-55:2, 60:11-18), much less inform Plaintiff that it would pass the payments to non-lawyers through lawyers that provided no legal services to Plaintiff in this case.

## LEGAL STANDARD

The Court has numerous grounds to impose sanctions for litigation misconduct: (1) FRCP 11(c)(3),[1] (2) FRCP 26, (3) 15 U.S.C. § 1681n(c); (4) 28 U.S.C. § 1927, and (5) its broad inherent powers. Under Rule 11 of the Federal Rules of Civil Procedure, sanctions may be imposed on an attorney for, *inter alia*, "misrepresenting facts," *Muhammad v. Walmart Stores East*, L.P., 732 F.3d 104, 108 (2d Cir. 2013) (per curiam), or "making false, misleading, improper, or frivolous representations to the court." *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008); *Kleehammer v. Monroe Cnty.*, 2013 WL 1182968, at *12 (W.D.N.Y. 2013). The Court may impose sanctions on its own initiative upon a finding of bad faith under Rule 11(c)(3), even when initiated by or made at the request of a litigant. *Muhammad*, 732 F.3d at 108; *Guild Mortg. Co. LLC v. CrossCountry Mortg. LLC*, 2022 WL 18999842, at *11 (W.D. Wash. Dec. 6, 2022) (describing "situations where withdrawal of an offending filing is either impossible or would not remedy the harm caused"). "Bad faith can be inferred when the actions taken are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 338 (2d Cir. 1999) (internal quotations and citations omitted); *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986) ("[B]ad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation.").

---

[1] The Rule 11(c)(2) safe harbor does not appear to be applicable because Stein Saks no longer represents Plaintiff and, therefore, cannot correct misstatements in filings. This Court may, *sua sponte*, issue sanctions pursuant to Rule 11(c)(3). The "safe harbor" provision does not apply when a court sanctions under Rule 11(c)(3). *In re Pennie & Edmonds LLP*, 323 F.3d 86, 87 (2d Cir. 2003) (holding "a sua sponte Rule 11 sanction denies a lawyer the opportunity to withdraw the challenged document pursuant to the 'safe harbor' provision."); *Revellino & Byczek, LLP v. Port Authority of N.Y. & N.J.*, 682 Fed. App'x 73, 75-76 (2d Cir. 2017) ("In Rule 11(c)(3) cases, however, 'the [twenty-one day] safe harbor does not apply and the court may impose sanctions without providing opportunity to withdraw the misstatement.'") (alteration in original) (quoting *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013) (per curiam)).

"Rule 26 provides a parallel to Rule 11 for productions made in discovery." *Lawrence v. City of New York*, 2018 WL 3611963, at *4 (S.D.N.Y. July 27, 2018). "[A]n attorney's signature on a discovery response or objection certifies that after reasonable inquiry, the production is . . . complete and correct." *Id.; Raimey v. Wright Nat. Flood Ins.*, 76 F. Supp. 3d 452, 475 (E.D.N.Y. 2014); *JMC Rest. Holding, LLC v. Pevida*, 2016 WL 3351007, at *5 (E.D.N.Y. June 14, 2016). A court must consider whether the attorney's inquiry before a production "was objectively reasonable under the circumstances." *Kiobel v. Royal Dutch Petrol. Co.*, 2009 WL 1810104, at *2 (S.D.N.Y. June 25, 2009). "In making her inquiry, an attorney may rely, when appropriate, on representations *by her client* or by other attorneys." *Id.* at *2 (emphasis added).

Under 28 U.S.C. § 1927, the court may also sanction attorneys who "multipl[y] the proceedings in any case unreasonably and vexatiously." *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 142 (2d Cir. 2023) (quoting 28 U.S.C. § 1927). "To impose sanctions under § 1927, a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay." *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 55 (2d Cir. 2018) (citations omitted). "A claim is without color when it lacks any basis in law or fact." *Kaufman*, 2019 WL 3997461, at *2 (sanctioning Stein Saks). "A court may infer bad faith when a party undertakes frivolous actions that are 'completely without merit.'" *Huebner*, 897 F.3d at 55 (citations omitted); *see also Kaufman*, 2019 WL 3997461, at *2 (sanctioning a Stein Saks attorney under § 1927 for "act[ing] in bad faith in both commencing and continuing to litigate plaintiff's meritless claims," which like Sofer's claims here, alleged inaccurate reporting of a late payment that was in fact late).

A federal court also may impose sanctions for counsel's misconduct pursuant to its

"inherent power." *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 367-68 (2d Cir. 2021); *Bakken Res., Inc. v. Edington*, 2019 WL 1437273, at *6 (S.D.N.Y. Mar. 29, 2019). "In practice, 'the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys . . . while an award made under the court's inherent power may be made against an attorney, a party, or both.'" *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143–44 (2d Cir. 2012) (alterations in original) (citation omitted); *see also Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 273 (2d Cir. 2021) (affirming finding of bad faith and sanctions under § 1927 and inherent powers where attorney who brought copyright claim knew the photograph was not registered, and therefore that the claim was unsupported, at the time of filing); *Rossbach v. Montefiore Med. Ctr.*, 2021 WL 3421569, at *9 (S.D.N.Y. Aug. 5, 2021), *aff'd in part, vacated in part on other grounds, remanded*, 81 F.4th 124 (2d Cir. 2023) (sanctioning counsel under § 1927 and inherent powers for litigating after he knew his client "had likely fabricated evidence"). "Bad faith can be inferred when the actions taken are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Schlaifer*, 194 F.3d at 338 (citation omitted).

## ARGUMENT

The Court should sanction Stein Saks, each of its partners, and Mr. Saland personally for each of the misrepresentations set forth above. *See Esposito v. Suffolk Cnty. Cmty. Coll.*, 517 F. Supp. 3d 126, 136 (E.D.N.Y. 2021), *aff'd*, 2023 WL 192671 (2d Cir. Jan. 17, 2023) (describing the judiciary's inherent power to impose sanctions for fraud on the court).

## I.    SANCTIONS ARE WARRANTED UNDER RULE 11(c)(3)

First, there was never any factual basis for alleging that Plaintiff had applied for and been denied a refinanced mortgage with Cornerstone. Stein Saks drafted the template for the false credit

denial letter, and Stein Saks directed Mr. Argy to use that template to prepare the false letter in this case. Stein Saks knew all along that Cornerstone did not prepare the letter. Thus, the mortgage denial allegations "lacked any basis in fact." *Kaufman*, 2019 WL 3997461, at *3. Again, Stein Saks knew all along that such allegations were false.

Second, there was never any factual basis for alleging that Experian's reporting of Plaintiff's "Synchony/Gap" account as late was "inaccurate." Synchrony confirmed that the allegations were false, and so did Plaintiff herself. Had Stein Saks done a modicum of due diligence, such as actually speaking to their client before filing the lawsuit, Stein Saks would have discovered the falsity of such allegations.

Third, there was never any factual basis to allege that Plaintiff, "by and through her attorneys, . . . respectfully sets forth, complains, and alleges, upon information and belief, the following." Again, Plaintiff did not have a single communication with Stein Saks about the allegations in the Complaint. The representation to the contrary is entirely false, and Stein Saks knew it was false when made.

Fourth, there was never any factual basis to allege that "Plaintiff disputed the Account with [Experian] with a dispute letter dated March 28, 2023," to request that the Synchrony account "be removed," but the account remained. Compl. ¶¶ 32-33. Plaintiff admitted that her signature on the dispute letter was forged—yet another fact that Stein Saks would have learned had it simply spoken with Plaintiff before filing suit against Experian.

In short, there is overwhelming evidence that Stein Saks signed and filed a complaint substantially premised on false information, which could have been discovered through minimal effort. Sanctions against Stein Saks, its partners, and Mr. Saland are warranted under Rule 11. *Mota v. Imperial Parking Sys.*, 2010 WL 3377497, at *13 n.33 (S.D.N.Y. Aug. 24, 2010) (finding

sua sponte that "plaintiff's prosecution of this suit based on a forged document could warrant sanctions" under Rule 11). The Court may infer bad faith, not only because the allegations are so completely without merit, but also because Judah Stein—a named partner at the Stein Saks firm—directed and participated in the creation of the fake Cornerstone letter. *Schlaifer*, 194 F.3d at 338; *Greenburg v. Roberts Prop., Ltd.*, 246 F. App'x 500, 502-03 (9th Cir. 2007) (bad faith where the "forged documents were the foundation of the case"); *Alexander v. Our Lady of Mercy Med. Ctr.*, 2000 WL 254015, at *1 (S.D.N.Y. Mar. 7, 2000) (conduct sanctionable under Rule 11 where facts in a complaint are contradicted by plaintiff's deposition).

## II.     SANCTIONS ARE WARRANTED UNDER RULE 26

Stein Saks's misrepresentations in discovery—going so far as to sign discovery responses verifying their accuracy when they knew them to be false—independently warrants the impositions of sanctions. Indeed, Mr. Saland swore "under penalty of perjury" that the discovery responses that he knew to be false were accurate. Plaintiff testified that she did not receive a copy of these interrogatory responses to review, did not provide any information to Stein Saks to prepare them and, had they asked, would have informed Stein Saks that the assertions contained therein were inaccurate. Not only is such conduct sanctionable, it warrants referral to the State Bar of New York. *Markey v. Lapolla Indus., Inc.,* 2015 WL 5027522, at *19 (E.D.N.Y. Aug. 25, 2015), *report and recomm. adopted,* 2016 WL 324968 (E.D.N.Y. Jan. 26, 2016); *Raimey*, 76 F. Supp. 3d 452 at 475.

## III.     SANCTIONS ARE WARRANTED UNDER THE COURT'S INHERENT POWERS

All of the conduct described above is sanctionable under the Court's inherent powers. *Weddington v. Sentry Indus., Inc.*, 2019 WL 5212355, at *3 (S.D.N.Y. Oct. 16, 2019); *United States v. Morales*, 2010 WL 2400120, at *9 (E.D.N.Y. June 11, 2010). Additionally, Stein Saks' bald-faced lie to the Court that its client "no longer wishes to pursue her claims against the Credit

Reporting Agencies" (ECF No. 30)—made solely to avoid personal sanctions and without any discussion with Plaintiff—independently begets sanctions and a State Bar referral.

So too do the numerous ways in which Stein Saks has violated its ethical obligations regarding its engagement in this case. Stein Saks did not have any discussions with Plaintiff about this case before the suit was filed. It did not discuss—much less thoroughly discuss—matters such as the contingency fee, fee sharing with other lawyers, and fee sharing with non-lawyers. These actions violated, among other things, Rules 1.2, 1.4, 1.5, and 5.4 of the New York Rules of Professional Conduct. *Weddington v. Sentry Indus., Inc.*, 2019 WL 5212355, at *3 (S.D.N.Y. Oct. 16, 2019) (demonstrating this Court has the authority pursuant to its inherent powers to sanction Mr. Saland and Stein Saks for violations of the Rules of Professional Conduct); *United States v. Morales*, 2010 WL 2400120, at *9 (E.D.N.Y. June 11, 2010). The Court can and should refer the matter to the Committee on Grievances to "take stock of [counsel]'s conduct across the board" and across cases, "including conducting any appropriate probe into whether his relationship with his clients is proper." *Castro v. Outdoorsman Resale, Inc.*, 2024 WL 659943, at *5 (S.D.N.Y. Feb. 16, 2024).

Furthermore, Stein Saks's conduct is sanctionable for making an agreement to collect "excessive" fees under Rule 1.5 of the New York Rules of Professional Conduct. Plaintiff had no knowledge that Stein Saks sought damages in an amount of at least $30,000 (Tobitsch Decl., Ex. 1 at 9-10 (Rog. 10); Ex. 10. at 80:21-81:2, 82:3-11), let alone that she only would have received $1,000 or about 3% of that amount, according to the contingency fee arrangement in the retainer agreement. *Id.*, Ex. 10 at 52:7-54:7. Once this was explained to her, Plaintiff testified that she did not find this to be reasonable (*id.* at 45, 51:25-52:8, 54:4-7 ("No, it's not reasonable . . . Absolutely no")), contrary to the self-serving statement in the retainer agreement that "Client further

acknowledges that any such fee is entirely reasonable, even in the event such fee substantially exceeds Client's recovery amount." Argy Decl., Ex. E at 2. That Stein Saks keeps every settlement dollar over the first $1,000 provides the firm with an improper incentive to inflate the value of each case, which it does through the means of false evidence.

## APPROPRIATE PENALTIES

The Court should "fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co.* v. *Haeger*, 581 U.S. 101, 107 (2017). It is appropriate for a court to exercise its inherent powers to level sanctions where a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled." *Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 46 (1991). The following forms of sanctions would be appropriate here:

- A monetary penalty that is appropriate to the scope of conduct abusing the judicial process.

- Attorneys' fees to Experian. *Pentagen Techs. Int'l Ltd. v. United States*, 172 F. Supp. 2d 464, 473-74 (S.D.N.Y. 2001), *aff'd*, 63 F. App'x 548 (2d Cir. 2003).

- Attorneys' fees for third-party discovery into the authenticity and provenance of the denial letters, given that Stein Saks knew, but did not disclose, it had provided the language.

- Anti-filing injunction. *Hermes of Paris, Inc. v. Swain*, 2021 WL 5170726, at *3-4 (2d Cir. Nov. 8, 2021).

- Referral to the Grievance Committee for the broader conduct of filing dozens of complaints based on false information. *Castro*, 2024 WL 659943, at *5.

Mr. Saland and the partners at Stein Saks should be held jointly and severally liable for these penalties. Fed. R. Civ. P. 11(c)(1); *In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig.*, 712 F. Supp. 2d 255, 271 (S.D.N.Y. 2010). Sanctions are imperative to deter Stein Saks from future baseless filings. Several district courts already sanctioned or admonished Stein Saks for pursuing

frivolous claims under the FRCA. This case vividly demonstrates that these prior warnings meant nothing to Stein Saks or its lawyers.

In 2019, Judge Cogan (EDNY) awarded attorney's fees and costs against Stein Saks under 28 U.S.C. § 1927 and 15 U.S.C. § 1681n(c) for pursuing frivolous FCRA claims, finding that "[i]f plaintiff and his counsel had properly investigated the factual basis for the claims before filing a complaint, plaintiff would not have brought this action in the first place." *Kaufman*, 2019 WL 3997461, at *3. Furthermore, "plaintiff and his counsel continued to litigate his meritless claims even after defendants provided documents clearly demonstrating that these claims were false." *Id.*

The trend continued in 2020. Judge Wolfson (New Jersey) awarded attorney's fees under 15 U.S.C. § 1681n(c) and its inherent power because Stein Saks "clearly failed to conduct a meaningful pre-suit investigation into the merits of Plaintiff's claims, and failed to withdraw the lawsuit against Chase when it became clear that Plaintiff's claims were meritless." *Rosenberg v. Equifax Info. Servs. LLC*, 2020 WL 4253063, at *3 (D.N.J. July 16, 2020). The court found Stein Saks acted in "bad faith," citing Stein Saks's "history of filing a frivolous FCRA complaint" in *Kaufman*. *Id.* Later that year, Judge Seibel (SDNY) admonished Stein Saks for again pursuing a baseless claim under the FCRA, stating that Stein Saks's position "takes some nerve." *Ostreicher*, 2020 WL 6809059, at *6. The court noted that the "FCRA was enacted to remedy real abuses in credit reporting, not for imaginative attorneys to advance farfetched, if not absurd, interpretations of the statute on behalf of unharmed debtors. The statute is a shield for debtors, not a sword for lawyers." *Id.* Nevertheless, Stein Saks's frivolous filings continued in 2021. Judge Chen (EDNY) noted that Stein Saks "appears to be bringing multiple meritless FCRA suits, presumably in hopes of scoring a quick settlement and attorney's fees." *Butnick*, 2021 WL 395808, at *5 n.8. While the court did not impose sanctions, it "caution[ed] Plaintiff's counsel to review its claims carefully

or face such sanctions in the future." *Id.*

In 2022, Stein Saks's conduct continued undeterred. *McAlister v. Equifax Info. Servs., LLC*, 2022 WL 3716535, at *3 (S.D. Ind. Aug. 29, 2022) (warning Stein Saks attorney that "he sail[ed] perilously close to the wind" and doubting counsel "bothered to read the documentary evidence in this case"). The *McAlister* court issued a "Warning" in a separate section of its summary judgment opinion: "The Court reminds counsel that his filings have consequences. The Court must take the time and effort conscientiously to weigh his arguments; it must take the time and effort to write a thorough and accurate disposition of the case. Frivolous filings disrespect that effort. The Court expects better." *Id.*

Stein Saks's conduct continued in 2023, when Judge Caproni (SDNY) sanctioned Stein Saks "for filing a complaint that unquestionably failed to allege standing adequately," despite "Stein Saks ha[ving] been told no fewer than four times before Mr. Rozenberg filed the instant complaint that his cookie-cutter approach to alleging standing was inadequate." *Zinnamon*, 2023 WL 3511123, at *1, *3; *Velazquez v. Elder Depot, Inc.*, No. 1:23-CV-105-VEC, ECF No. 15 (S.D.N.Y. May 1, 2023) (incorporating the same sanction as *Zinnamon*). The judge admonished the "firm's apparent decision to spend no time developing the facts necessary to allege standing and just hope that it does not get caught is wasting the Court's time." *Zinnamon*, 2023 WL 3511123, at *3.

As shown above, Stein Saks is a repeat filer of frivolous FCRA claims in federal court, and multiple sanctions and stern warnings have been utterly ineffective in stopping Sein Saks from "bringing multiple meritless FCRA suits, presumably in hopes of scoring a quick settlement and attorney's fees." *Butnick*, 2021 WL 395808, at *5 n.8. Indeed, in the wake of these prior cases, Stein Saks simply upped the ante by creating false evidence to manufacture standing and coerce

quick settlements.  Enough is enough.

## <u>CONCLUSION</u>

There is no clearer case for the imposition of steep sanctions and a referral to the State Bar.

Accordingly, Experian respectfully requests that the motion be granted in full.


Dated: April 24, 2024                         Respectfully submitted,

*/s/ John A. Vogt*
John A. Vogt (admitted *pro hac vice*)
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, California 92612
Phone:  (949) 553-7516
javogt@jonesday.com

Kerianne Tobitsch
JONES DAY
250 Vesey Street
New York, New York 10281
Phone:  (212) 326-3939
ktobitsch@jonesday.com

*Counsel for Defendant*
*Experian Information Solutions, Inc.*