UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Sheindle Sofer,<br><br>   Plaintiff,<br><br>v.<br><br>Transunion, LLC,<br>Equifax Information Services, LLC,<br>Experian Information Solutions, Inc., *and*<br>Synchrony Bank,<br><br>   Defendants. | Docket No.: 1:23-cv-04844-DLI-JAM |

### SUR-REPLY DECLARATION OF JUDAH STEIN IN FURTHER OPPOSITION TO EXPERIAN INFORMATION SOLUTIONS INC.'S MOTION FOR SANCTIONS

I, Judah Stein, Esq., declare and state:

1. As one of the founding partners of Stein Saks, PLLC ("Stein Saks"), and the subject of many of the allegations set forth by defendant Experian Information Solutions, Inc. ("Experian") in its various flings, I respectfully submit this Declaration in further opposition to its Motion for Sanctions (Doc Nos. 48-53 the "Motion").

2. I appreciate the Court granting me the opportunity to submit this Declaration as a sur-reply to Experian's latest round of accusations, many of which were only first alleged in its reply papers filed on May 29, 2024 (Docs Nos. 63-66, together, the "Reply").

3. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, I would competently testify concerning such matters.

4. On June 3, 2024, a few days after it filed its Reply on this Motion, Experian commenced a RICO action in the Central District of California, styled *Experian Information Solutions, Inc. v. Stein Saks, PLLC, et al.*, Case 8:24-cv-01186-DFM (the "RICO Lawsuit," a copy of the Complaint is annexed as **Exhibit 1**).

1

5.      The Complaint in the RICO lawsuit -- which is 118 pages and 525 paragraphs – is premised on the exact same allegations at issue on this Motion. The RICO Lawsuit names Stein Saks, its partners, two of its associates (Saland and Babad), Justin Zeig, Esq., the Zeig Law Firm, Chesky Monk and Daniel Soffer. The RICO Lawsuit does not name Yenon Argy, who has admitted to defrauding Experian and others, and who now provided a second incriminating and false declaration to Experian to be used on this Motion. Experian continues to ignore our requests that they disclose any consideration provided to Argy in exchange for his declarations. *See* Doc. No. 56-3.

**Experian's Fabricated Evidence of My "Consciousness"**

6.      In its Reply to Stein Saks' Opposition to the Motion, Experian presented certain communications between myself and Yenon Argy as demonstrations of my "consciousness of guilt" with respect to the Cornerstone Letters that Argy has admitted to forging.

7.      Specifically, Experian pointed the Court to a WhatsApp conversation that I had with Argy on January 11, 2024, writing in its Reply brief (Doc. No. 63, p. 3, emphasis added):

> "**Mr. Stein specifically instructed** Mr. Argy to communicate with him via WhatsApp message because, **in Mr. Stein's words**, the '[m]essages and calls are end-to-end encrypted,' so '[n]o one outside of this chain, even WhatsApp, can read or listen to them.' If Mr. Stein had no knowledge that Mr. Argy had created the fake credit denial letters, there would have been no reason to be concerned about the deposition of Carol Franz, much less to instruct Mr. Argy to communicate with him only through encrypted messages. Consciousness of guilt pervades these exchanges."

*Id*., *citing* Ex. 10 to the Reply Declaration of John Vogt, Esq. (Doc. No. 64).

8.      Twice more in its brief, Experian repeats this allegation about my "instructing" Argy to ensure our communications are "encrypted" and points to this WhatsApp conversation in declaring that my "consciousness of guilt pervades these exchanges." *Id*., pp. 4, 15.

9.      But I never wrote those words, or anything of the sort.

2

10. I submit to the Court a true and correct screen shot of that conversation with Argy.



11. On its face, it is clear that the language Experian attributes to me is actually an auto-generated message from WhatsApp. My understanding is that this robo-message appears at the start of every new WhatsApp conversation.

12. Not only was Experian wrong to attribute those words to me, its accusation that I sought to switch my communications with Argy to WhatsApp in order to "hide" them is also patently, and rather obviously, false. Indeed, the text on the left side of the above image, in white, is from Argy; my response is in green and on the right. In other words, it was *Argy* who initiated these WhatsApp communications, not me.

13. It is telling that in the week since my attorneys alerted the Court and Experian as to the misrepresentation of this WhatsApp conversation (Doc. No. 67), neither Experian nor Argy has taken any steps to withdraw or correct this misstatement to the Court. Indeed, the RICO Lawsuit maintains the same allegations about this WhatsApp conversation being initiated "because" WhatsApp conversations are encrypted. *See* RICO Lawsuit at ¶86.

14. The Motion is premised on my being accused of "instructing" Argy to forge documents; now Experian's Reply alleges that I "instructed" him to communicate via encrypted message by falsely attributing an autogenerated message from WhatsApp as a statement that I made. Both allegations are plainly false.

15. Worse, in his new Declaration (Doc. No. 65) Argy swears that he reviewed all of the WhatsApp messages that Experian's attorneys submitted to the Court on Reply, and claims they are authentic representations of our conversations, and further confirms that anything in them that does not have his "Hebrew lettered" name are his words. *Id.*, ¶¶6-7. That statement is also demonstrably false. My suspicions that Argy essentially signed whatever Experian placed in front of him just so he can secure a release have now been all but confirmed given his most recent false declaration and his conspicuously not being named in Experian's RICO Lawsuit despite being the primary alleged wrongdoer in that case.

16. Regardless, in my discussions with Argy, he never told me that Stein Saks should be concerned because the Cornerstone Letters he provided were inauthentic; on the contrary, as the records submitted by Experian show, Argy represented to be (and apparently was) in direct contact with Franz, whom I understood to be someone he worked with on a regular basis.

17. Argy knows that I was unaware of his fraud – or he would have stated such explicitly in his declarations. He did not. Instead, he propounds obscure allegations that his forging of documents was at my "direction," whatever that means. And as evidence of my state of mind, Argy and Experian point to an autogenerated message from WhatsApp and falsely attribute it as a statement I made. I am outraged by this.

**Experian's Misrepresentation of Other Stein Saks Matters**

18. Experian uses its Reply to try and conflate its factual allegations pertaining to this action with the facts and circumstances of various others. It gallingly cherry-picks snippets of conversations to try and concoct a broad scheme out of thin air.

19. For example, Experian discusses Stein Saks' representation of Miriam Nachison (Reply Brief, p. 4), accusing me of trying to convince Argy to have her apply for credit in order to generate a denial letter for use in litigation. Experian conveniently leaves out my email to Argy specifically stating that we will proceed without any such denial letter, a true and correct copy of which is attached hereto as **Exhibit 2**. Nor does Experian mention that that Stein Saks did, in fact, later file an action on Ms. Nachison's behalf *without* any denial letter, a copy of which is attached hereto as **Exhibit 3**.

20. In other words, these conversations with Argy only confirm what I have previously explained to the Court: it is helpful for a FCRA plaintiff to have a denial letter in their file, but not necessary, and Ms. Nachison's case is a perfect example of our recognizing what documents would help our client's case, and then proceeding *without* such documents when they were not available.

21. Similarly, Experian describes a "credit denial scheme" involving Daniel Taillard, relying on conversations surrounding his financial resources and the risk of his getting approved for a Capital One Venture X card. Reply Brief, p. 5.

22. These conversations were between Argy and a third party that has never worked for Stein Saks. Neither I nor anyone at Stein Saks was party to them. I presume Experian hopes that the Court will somehow attribute these conversations to me or my law firm, but there is no basis to do so—particularly because Stein Saks never filed any case on behalf of Daniel Taillard, who did not want to proceed with litigation.

5

23. Experian thus asks the Court to construe a "scheme" from conversations between others about potential clients we never actually represented in any litigation.

24. Experian also claims that the Cornerstone Letters were so obviously inauthentic that "any person with even a hint of experience in the credit reporting industry would have known that the Cornerstone letters were not legitimate after a cursory review." Reply Brief, pp. 17-18. But surely Experian and its attorneys at Jones Day and other law firms have more "than a hint of experience in the credit reporting industry," and none of those attorneys or Experian professionals flagged any Cornerstone Letters as obviously problematic until December 2023; that is, five months after they were first produced to Experian in this action and others. The idea that Experian and/or its attorneys immediately spotted something inauthentic in those documents—and that Stein Saks should have as well—is another false misconstruction of what occurred here.

25. In fact, Experian continued to settle numerous cases involving Cornerstone Letters well after it learned of the alleged authenticity issue. Attached as **Exhibit 4** is a true and correct copy of the first page[1] of a settlement agreement that Experian executed on March 18, 2024, with respect to an action that referenced a Cornerstone Letter. Experian cannot claim we should have known the Cornerstone Letters were problematic on their face, while at the same time Experian's team of attorneys apparently saw no issues with those very same letters, and continued settling cases involving such letters.

**Carol Franz's Communications with Yenon Argy**

26. In its Reply, for the first time, Experian shares communications between Argy and Franz. These conversations only highlight the need for Franz's deposition or cross-examination, and underscore why Experian took such drastic steps to ensure that did not occur.

---

[1] This settlement agreement contains confidentiality provisions that prevent its public filing, but we will of course provide a copy of such agreement for the Court's review as requested.

27. Franz submitted a declaration swearing she had no idea that Argy was affixing her name and letterhead to denial letters she did not write. *See* Doc. No. 53. In it, she testified that the first time she saw the *Mizrahi* Cornerstone Letter was after she was served with Experian's subpoena. *Id*., at ¶2. She also testified that she does not know Argy's address or the name of any entity related to his credit repair services. *Id*., at ¶10.

28. The communications Experian has since shared from Franz, however, raise questions about the veracity of her initial declaration, which suggested that Argy is a near stranger to her, who forged the Cornerstone letters without her knowledge or participation.

29. Specifically, Experian submits evidence of Franz's reaction to her receipt of her subpoena, which Experian states was served on her on December 7 and December 14, 2023. *See* Tobitch Decl., Doc. No. 66, ¶2.

30. On December 12, 2023, Argy left a voicemail for Franz, the transcript to which is attached as Exhibit 3 to the Vogt Decl. *See* Doc. No. 64-3. He references their prior conversations about Experian's subpoena. *Id*. Experian also submits Franz's messages to Argy telling him that she received the subpoena from Experian. *Id*., Doc. No. 64-5.

31. But neither Argy nor Franz bother to explain why, upon receiving a subpoena from Experian suggesting her name and forged signature had been affixed to denial letters she had not authored and with which she was unfamiliar, Franz would think to reach out to Argy to then coordinate her response to Experian with him. The subpoena certainly makes no mention of Argy or his company at all. *See* Ex. 1 to the Tobitsch Decl., Doc. No. 66-1. I find this to be an extremely odd coincidence.

32. Moreover, if Franz had no part in authoring any of these letters or authorizing Argy to do so, wouldn't her reaction to Argy upon seeing such letters be confusion, shock and outrage?

7

If Franz had nothing to do with the Cornerstone Letters, why would she coordinate her response to the subpoena with Argy, who is not even mentioned in the subpoena? Instead, the evidence Experian submits suggests that upon receiving the Subpoena and seeing letters with her apparently forged signature, Franz shows no signs of distress or confusion, nor does she make a single comment regarding the inauthenticity of such letters. It is no wonder Jones Day went to such great lengths to ensure the Franz and Argy depositions would not proceed. *See* Stein Saks' Opposition Brief (Doc. No. 61), Section IV.

33. Franz claims in her Declaration (¶5) that Argy had referred her another client named Adam with a similar last name as "Mizrahi" and that she had, in fact, sought credit information for this client, which is what prompted her to reach out to Argy when she received the subpoena from Experian. But she states that Argy told her she was thinking of someone different than the "Adam Mizrahi" referenced in Experian's subpoena. *Id*.

34. In other words, according to Franz, she checked to confirm whether Argy had referred Adam Mizrahi to her, and he told her that he did not, but she then spent weeks in regular contact with him about how she should respond to Experian's subpoena. It does not appear that Franz ever questioned or challenged Argy about how her name found its way to his clients' credit documents, or that Argy either denied or confirmed his involvement in that scheme to her.

35. Because Franz was never deposed, and because Experian engineered it so that we only have what information it has subjectively chosen to provide this Court, it is unclear how or why Franz realized that Experian's questions about the letters bearing her name required such close and consistent communications with Argy, a man she claims she hardly knows. Her ability to seemingly connect those dots suggests that she—not Stein Saks—was aware of Argy's scheme.

36. I also want to reiterate that I never told Argy (or Franz, who Experian appears to concede I have never talked to at any time) to somehow evade sitting for depositions. As I explained previously, when Experian raised questions about the veracity of the Cornerstone Letter, Stein Saks sought to dismiss this case (and others that had referenced such letters). I was surprised when Experian refused, but Experian points to nothing to bolster its contention that my surprise was really fear that Franz would "expose the fraud"—Argy had not told me that he manufactured the letters.

37. Argy did tell me that Franz did not want to sit for a deposition, that she was older and that her husband was ill. That a third-party recipient of a subpoena was hesitant to retain attorneys, search for documents and/or testify did not, and still does not, seem out of the ordinary to me. Since I thought that if this or the *Mizrahi* case were dismissed, there would then be no need for Franz to have to participate in a litigation that Argy told me she wanted to avoid, I communicated as much to Argy.

38. But at no time did Argy suggest Franz sought to avoid a deposition because the Cornerstone Letters were fraudulent, nor did I ever suggest that. Even now, it is unclear why Franz would have wanted to avoid her deposition for this reason, since according to her and Argy she had no idea those Cornerstone Letters even existed, had no idea how her signature ended up affixed to them, and could have easily said as much under oath.

39. Experian also tries to twist my statement that given Experian's refusal to dismiss this case "there is no response to be made now." Reply Brief, pp. 3-4. I was, of course, describing whether Stein Saks would be filing a response in opposition to Experian's submission to the Court.

40. But Experian uses this language to claim that upon learning of Experian's questions about the veracity of the Cornerstone Letter, Stein Saks "had a legal duty to correct and apprise the Court that the allegations and evidence supporting the case were fraudulent." *Id.*

41. But I only learned of Franz's statements about the Cornerstone Letters when Experian finally decided to share her January 24, 2024, Declaration, which they did on April 24, 2024, and not before. It was *Experian* that sat on that information for months, not Stein Saks. And it was Experian that sat on this information for months after representing to us and this Court that they were still trying to obtain it. There can be no merit to Experian's suggestion that Stein Saks had an obligation to publicly declare the Cornerstone Letters fraudulent without the benefit of either Argy's and Franz's later-filed declarations.

42. I appreciate the Court continuing to take the time to read my Declarations and respectfully request that the Court deny Experian's motion.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: June 10, 2024

_____
Judah Stein